at all. Okay, Mr. Jones. Thank you, Mr. Chief Judge, and may it please the Court. I'm Craig Jones. I'm here on behalf of the family of Darren Wilson. This is not the same Darren Wilson who was the police officer in Ferguson, Missouri, who shot Michael Brown, but this is the Darren Wilson who was shot naked in the woods of Barntow County, unfortunate soul with a mental illness. And I'd like to start by taking one minute to read an excerpt from Judge Murphy's decision that I think is a nice segue into the heart of the legal issue on appeal. Hold on just a second. Our docket revised, I'll bet, shows that Brewster v. Hetzel was the second case up. I just want to make sure, are the Brewster v. Hetzel... All right, you got leapfrogged somehow, or maybe we're behind, but we'll go ahead with Wilson while we've got it here, and then we'll catch you next. Your Honor, I'm fine with that, but my clients are supposed to be driving in from North Georgia, and if they would like to go first, since my clients aren't here yet, I would be happy. I would like to afford you that opportunity. I apologize for any confusion. If you all are ready, let's go ahead with that case next. Thank you. I'm trying to figure out what... Folks from North Georgia may not be used to Atlanta traffic, Mr. Jones. I know in 25 1⁄2 years, I'm still not used to it. One of them is a Baptist pro, Joe, and I'll never hear the end of it. There you go. We're ready when you are, Mr. Smith. Thank you, Your Honor. 11? Go ahead. I'm sorry, Your Honor. I think I'm doing 11 on 11 minutes. Yeah, you got 11. I'm just mentioning that because the clock says 12. We're on Brewster v. Hetzel, which everybody's docket sheet, but apparently the clerk's office shows. I'm so sorry. I've got Toby Smith and John Boehner. That's correct. It's 11 and 4. This is Mr. Smith. Eleven minutes to start with, not 12. They're up now. We try to give you an extra minute and you just won't take it. I just wouldn't feel right, Your Honor. Thank you very much. May it please the Court. My name is Toby Smith. I represent Sumner Brewster. The district court in this case erred in denying Mr. Brewster relief on his 2254 petition. The district court, in fact, did not decide the merits of his petition. Rather, it found that Mr. Brewster had insufficiently pleaded the claims that he presented and had offered only conclusory allegations. Under this court's precedents, the case should be remanded. When I refer to this court's precedents, I'm talking about the Clisby v. Jones line of cases. It should be remanded because Mr. Brewster did sufficiently plead the claims in his 2254 petition. This court has held in Dupree v. Warden and many other cases construing Clisby that a pro se litigant sufficiently pleads ineffective assistance of counsel when his habeas petition states that IAC claims are described in an attached memorandum and the memorandum sets out the facts supporting the claim. Mr. Brewster did that in his 2254 petition, and the district court was in error to conclude that he had not sufficiently pleaded his claims. We would ask the court to remand to the district court for it to vacate his convictions for reasons stated in our brief and that I can elaborate on further. But in the alternative, we would ask the court to remand to the district court for it to consider the merits of his claims for the first time. Your strongest argument, of course, is the mistrial argument. In effect, assistance of counsel failed to move from mistrial or object. And I think it's certainly an easier claim for you if the Alabama court of criminal appeals didn't address the merits of the claim that he actually made. But let me give you the strongest argument I can see, which I'm articulating a little different than he did, that they did address it. First of all, they said this court of criminal appeals memorandum opinion. Here, appellant states the jury was coerced into reaching a verdict, semicolon. Now, if it had ended there, put a period and say we disagree, period, that would have been addressing his merits, his claim. That's his claim. They were coerced into reaching a verdict by the fact that they were out so many times. Court of criminal appeals could have just said affirmed and we would infer that they reached his claim. Your position is that where they messed up was after the semicolon by saying, but he fails to cite the language that he finds coercive or threatening, indicating that they understood the claim to be a language claim as opposed to repetitive denial of the jury's request, basically, for a mistrial. That's correct. Why shouldn't we interpret that language as addressing his coercive claim as opposed to just a language instruction claim? That doesn't fairly encompass the claim that Mr. Brewster presented, which although I realize that before the semicolon it is very succinct and therefore is broad because there wasn't enough language in that portion for it to achieve any real specificity. But the basis for objecting to the supplemental instructions, if nothing else, was at bottom the fact that the court kept giving them, continually gave, continued to send the jury back. You're going to the merits now. Maybe your fallback position is it was so obviously a coercive series of events that even if the court of criminal appeals addressed the merits and we owe a deeper double deference on performance prong to the court of criminal appeals' decision, you still win. But that's a mountain that if you don't have to climb. I'd rather not. Right. Your Honor is correct that that is our fallback position. But what I am trying to say is that what the court of criminal appeals addressed is fundamentally different from the broader claim that Mr. Brewster presented because the fact that that language doesn't go very far or is simple, succinct, and therefore conceivably broad doesn't change the fact that the court's analysis or explanation of its decision doesn't address the claim that Mr. Brewster presented. So whether you want to frame it as the court correctly construed it but didn't address it or want to frame it instead as the court misconstrued it, I think in either event you leapfrog the EDPA deference because the court did not address the merits of his claim. You see, I think you lose the deference argument on the former, that is the court correctly construed it but didn't address it because once the court says this claim is before us and then thereafter there is the word affirmed, we've said before we don't grade them on their articulation of the reasoning and rationale and all that kind of stuff unless the rationale shows that they are not addressing the claim. But affirmed covers everything that goes before, I think. And I guess one thing I would say is where the Court of Criminal Appeals ultimately didn't provide any new analysis at all. It quoted what the Circuit Court of Etowah County had said and then to that added simply a conclusion that what the Circuit Court of Etowah County had done was supported by the facts and the law and therefore it summarily affirmed. But either way, under the Supreme Court's decision in Wilson v. Sellers, we look through the Court of Criminal Appeals decision to the last decision that actually gave a stated rationale, which would be the Etowah. So either way we wind up at the same place. But the place we wind up at is a place where the merits of his claim were not addressed by the state court. I understand that the brief preamble of five words or so that refers to coercion by itself could be read broadly by itself. But I think that it has to be understood in the context of what follows. And what follows is an exclusive focus on the language of the supplemental instructions. And there is no indication at all from the Court's resolution of that claim that it understood it to be a claim that contemplated or that involved the comprehensive coerciveness of knowing the jury's numerical division. Repeatedly sending jurors back into the jury room when they repeatedly had said that they could not resolve the claim. Of initially telling them the judge who was presiding on the first day when he gave the pattern modified Allen charge toward the end of the day, saying go back and give it one more shot. And then on the second day, the judge who had stepped into his place, Judge Millikin, was all of a sudden there was no more of this one more shot vibe that Judge Hall had given the preceding day. Instead it was just keep at it, keep at it. In the last supplemental instruction, Judge Millikin said start at the beginning if you have to to jurors who had for almost 24 hours been telling him that there was no chance that they were going to be able to resolve it unanimously. If we disagree with you on the construction of the court of criminal appeals decision or interpretation of it or whether it is warranted, and we think it is warranted a deeper deference, what Supreme Court decision clearly establishes that the events in this case violated your client's constitutional rights? Well, the Supreme Court case that we are asserting was unreasonably applied was Strickland v. Washington. That can't be. I mean you can't say everybody has the right to effective assistance of counsel. He didn't get it in this case and therefore the Supreme Court decision in Strickland clearly establishes that the State Court decision is wrong. If you did that, then every ineffective assistance of counsel claim on the merits would be collapsed into the 2244 D-2 and that is just impossible. Judge, the best I can say in response to that is that the Supreme Court, for example, in Williams v. Taylor in 2000. That is different. That is a mitigating circumstance where the hell that we have said this before specifically about mitigating circumstances in a capital case, etc., etc. But what the court's fundamental, when the court came down to the unreasonable application question, it was addressing, its holding was that the lower court had unreasonably applied Strickland. It cannot be. And to the extent that there is language to that effect in Williams, it went beyond the actual holding of that case which was based upon previous mitigating circumstance deficient performance cases. And the Supreme Court certainly had made clear thereafter. It cannot be that every violation of Strickland's performance prong or every violation of Strickland that would de novo entitle you to setting aside the conviction is clearly established law. It just can't be. Okay, Your Honor. Speaking for me, it can't be. Okay. Well, what Williams went on to say, it described the standard for what is an unreasonable application and stated that an unreasonable application is one that either unreasonably extends a legal, it may have finished my point I'm about to run out of time, that unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. And our position is that the Alabama courts unreasonably refused to recognize ineffective assistance and to apply the Strickland standard there. Okay. Thank you, Mr. Smith. We'll give you your full four if you need it on reply. Mr. Davis. Judge Carnes, Judge Branch, Judge Fay, may it please the court. When the state court addressed this claim, we believe that it did address the claim that Brewster contends that he presented and that was misconstrued. You have to contend that because you lose if you don't, correct? I mean, if the Court of Criminal Appeals didn't address that claim and the issue is de novo reviewed by this court, we'd have to find that that was a slap you in the face, obvious occasion for an objection and mistrial motion which would have been granted and that any lawyer who was awake and functioning would have moved for it, don't we? Judge, I disagree. Well, all right. I counted them five if you count the informal, what I call informal, Allen charges. Furthermore, you went from nine to three to eleven to one and they made it clear it was holding out for acquittal and the judge kept sending them back. When they reported back in, she's just doing crossword puzzles, he took the crossword puzzles away from the woman and said, I've done my duty, I hope you'll do yours. If that's not coercive, I don't think you can find one of our decisions that involves facts that are coercive compared to that. Judge, these deliberations, jury deliberations began at 11.23 a.m. and I'll just refer it as day one. I understand the chronology. Okay. But the jury came back relatively soon and said, we're deadlocked. Correct. The jury came back again and sent a note and indicated deadlock, deadlock, deadlock, four or five times. Okay. And it kept getting down narrower and narrower for acquittal. And then the judge, I mean, any reasonable juror who's holding out and keeps getting told to continue deliberating, remember, I told you you had a duty to decide this case. And, in fact, that's why he's telling her. And then she just does the conscientious objector thing and starts doing crosswords and he takes the crossword puzzles away from her and tells her to do her duty. He's done his. There is no reasonable person I think would interpret that as anything other than you go along with the others and I'll let you all out of here. He's telling her she's going to stay there forever until she agrees. Judge, I would say that as far as Judge Carnes and Judge Fay, as far as failing to object at that point, first of all, it would have been denied by the trial court. So we want to hold the lawyer ineffective. Then they've got rid of procedural bar and can raise it on appeal. Okay. And I think objecting to a trial court, I understand that you view it as coercive. But our position, well, let me go back and maybe I can, in a sense, redirect to why I believe that the state courts did address the claim. And here's why. I'll say at the beginning, the opinion could have been a little better written, both opinions. But the test under Alabama law, still today, at the time this case occurred, and today, and the federal test is the totality of the circumstances when you look at jury charges. And while the court, the trial court in its analysis focused on each of the language of each charge and found it not to be coercive. That wasn't his claim. If you look at his claim, which was pretty darn well written on pages 19 through 20 of his attachment, it doesn't even use the word language and it doesn't focus on the language of anything. It just says it was coercive because they kept telling him to go back and deliberate. Right. But Judge, what our position is, is that by examining each of the charges individually, which is what you would infer from his order, that he by necessity, and so did the Court of Criminal Appeals, look at all of the charges. Where does his, are you talking about his being the petitioners? No, no. I'm sorry, Judge. When I say his, I'm referring to the trial court, the Rule 32 court. When it denied that particular claim, it said that the charges, or excuse me, that the language in the Allen charges was not coercive or threatening, I believe. But that's not his claim. That's the problem.  12 times in a row, over a period of 12 days, and not get a punctuation mark wrong in any of the charges, and that's still coercive. No, I see your point, Judge. But that's what he's claiming. Right. My response is that the trial court addressed the claim on the merits, and so did the Court of Criminal Appeals, because by addressing each of the charges, in effect, individually, and not looking at the, that they did look at the totality of the circumstances, because how can you look at four different charges and just isolate them and go, this one's good, this one's good, this one's good, this one's good? Well, of course, they didn't do that. They said a review of all of the language in the supplemental charge singular, singular fails to show. So they didn't even look at the language in all of them. They just looked at the language in one supplemental charge. Well, again, I would say that the opinion could have been written better. I mean, we take that as a given in most opinions. But I think I've asked you. I've taken up enough of your time. I'm going to let you continue to argue. I'm just unpersuaded that the Court of Criminal Appeals addressed this claim by this petitioner who, in my view, could scarcely have articulated it any better other than to say, and I'm not talking about the language per se. Right. Well, Judge, I would just respond by saying that the standard under Alabama law is to look at the, as they point out in their brief, the totality of the circumstances, the charges all considered together in a whole. And we believe that is what the trial court did when it made its ruling. It could have explained itself a lot better. But it clearly looked at the language. And it may have said charge, but they were essentially the same charge given except for the final charge, and that a fair reading of the judge's opinion was. And again, not just taking my interpretation of it, but Alabama law, the test is look at the charges considered as a whole. You would concede that at some point, if there are a number of Allen charges being given, that at some point the sheer number of Allen charges would become coercive, right? At some point. Not to the point when these proceedings were terminated. Had they gone on longer? I don't know how much longer. I think that, you know, who's to say, and I guess when I think of this. You've got to say, because you've conceded that eventually it would have reached that point. I think it reached the point somewhere between, at least somewhere between the fourth and fifth time the jury said, we're done, we can't reach it, she's not deliberating, let us go. Basically, I'm paraphrasing very roughly. You think it would have been thereafter. Where thereafter? I think if the jury had come back again, I think after this charge where he gave the blended charge and recharged them as to reasonable doubt, I think a charge after that would have become very problematic. I think the trial court did. Why? Well, I think when he recharged them as to their fundamental duties, not only as jurors, but also recharged them as to reasonable doubt and things like that, that went back over some of the original charge that was given. At that point, there was nothing left to do. And so after that point, I think, yes, we're running into trouble. Well, I go back to the question. He didn't make a juror message when he took away all the printed material. Judge, that could be an interpretation of that, but I look at it as a trial court enforcing its authority as the trial court to make jurors do their job. I just can't imagine a clearer message than, Andy, you're going to be there forever until you agree. Forever without crossword puzzles. Judge, I would say that it was—I would consider that separate and say that's just a trial court saying, do your job. And this court knows from its own jurisprudence how much trouble sometimes we have with jurors doing their job or not doing their job and undoing convictions years down the road. And this court was conscientiously trying to do it. It may appear somewhat abrupt, Judge Fay. I can see that. But I think that that was— I can't imagine a judge doing it. I don't know how the message would be any clearer or more approach. Well, I would just simply say that the lawyer not objecting at that point, I don't know what you could have done. The objection would not have been sustained. I think the trial court has said, I'm going to make these folks live up to their oaths as jurors. We've been here. And by the way, at the time that was given, that was on Day 2 at 2.48— or excuse me, I'm sorry, that was at 2.25 p.m. So from 11.23 the day before until 2.25 p.m. the next day, this court has seen many, many juror deliberations that lasted a lot longer. But we do concede that at some point they would have— and it was getting very close, so I will concede that. But up to the point that these proceedings were terminated, that it was not coercive, it was not threatening. You said that it would have been if they had gone one more because at that point there was nothing left to do. But the court was being made aware of the division of the jurors and that it was coming down 9-3-11-1. And by taking away the newspapers, isn't it at least arguable that there was really nothing more to be done after the judge removed the newspapers and the crossword puzzles? Judge, I would say in response to that, at that point if they had come back again, then most likely it would have been time for the mistrial. And I think that motion would have been made. Let me say this. As you evaluate this counsel's performance and you look at these lawyers, this lawyer, I think, the record shows, supports the claim that he was not only competent, but he was very competent. Then why didn't the State put in an affidavit or ask for a hearing and let him testify as to why he did this and why he allowed the jury to go from three holdouts to acquittal to one to she's refusing to deliberate that one because we want to convict and she wants to acquit and him not object to the further instruction at that point. Why not let the lawyer explain what conceivable strategy he had for that? Judge, I would say that there could have been good reasons as to why this lawyer . . . What's the good reasons? I mean, he really thought if the judge had just dynamited him one more time that she could have swung it even though she wasn't talking. Her silence could have swung the other 11 to acquit. I mean, there are only two possibilities when you're headed from three holdouts down to one and you get another dynamite charge, two realistic ones, and that is a mistrial or a conviction. So what strategy is there not to object and not to move for a mistrial? Judge, it could be that he felt like that the motion would be denied. He tried the case. So why not move it and preserve the issue for appeal? Judge, that's . . . I don't know. I would say that I think that he tried the case masterfully up to the point of the jury instructions or the jury deliberations. I don't think there's any dispute about that. He had a theory of the case. He had a good theory. The state had a good theory, but the defense had a good theory, and he pursued it. He aggressively questioned people. He aggressively questioned the circuit judge that took the plea of the state star witness. So this guy, he didn't hold anything back, and he observed the conduct of the trial. He knew his client. He knew what his client had told him. He observed the trial court. He observed the demeanor of the jurors. And for reasons that are obviously not on the record, he decided not to object. So I think that his overall performance, which was outstanding, should be taken into account to support some reasonable theory that he decided not to object. Of course, the other side would say that he also failed to propose a charge on identification, which was really the only defense he had. So they may take issue with the masterful trying of the case. And even if they don't, just because he was effective in all respects except one, is no defense to an ineffective assistance to counsel claim. But we've got your case. Mr. Smith, you don't really have anything to add, do you? I was going to add a couple of things. I was going to try to give a better answer to an earlier question. I just don't see how you could get any better, but if you want to try, go ahead. Do you want to change our mind? I don't think I do after hearing that. Thank you for the guidance. Hint, hint. Thank you. We'll take that case under submission. I believe we're going to take a short recess at this time. Mr. Jones, I see your clients are here, but we're still going to take about a five or ten minute break. All rise.